Plaintiff sued to recover judgment for an alleged balance on open account for the sale to defendant of lubricating oils and greases. Defendant, while admitting liability for the amount for which he is sued, less illegal interest charges, reconvenes and sues plaintiff for a larger amount on the theory that during the years of 1943 and 1944 a partnership or joint venture existed between him and plaintiff that was dissolved by consent on November 18, 1944; that he liquidated the affairs of the partnership or joint venture, and in doing so incurred certain expenses, itemized in his petition, one-half of which, he avers, should be reimbursed to him by the plaintiff.
From a judgment for plaintiff, defendant appealed to this court.
Only a factual question is tendered by the pleadings. The only persons who gave testimony in the case were Mr. Homer H. Harris, Sr., for plaintiff, a commercial co-partnership, and the defendant.
Plaintiff is engaged as a wholesale and retail dealer in building material, hardware, paint and other merchandise in the City of Alexandria, Louisiana. In the early part of the year 1943, and prior thereto, defendant was in its employ as a counter salesman. At that time and prior, plaintiff franchised for the sale of the products (lubricating oils and greases) of the Bareco Oil Company in said city and adjoining territory. Defendant, as salesman, sold these products. In the early part of the year 1943, at the initial suggestion of the defendant, his relationship to plaintiff's business underwent a change. He and plaintiff, through Mr. Harris, entered into an arrangement whereby defendant would give all his time and attention to the sale of said products; and that plaintiff would purchase and keep on hand in its warehouse a large stock of said products from which sales in large and small lots could be made by defendant, whose duty it was to go out and solicit business.
Defendant admittedly was not in financial condition to carry on a business of the proportions comprehended by the agreement with Mr. Harris. Mr. Harris, it is also admitted, agreed to the new arrangement with defendant, more out of a desire to help him financially than to further his own company's interests.
The profits derived from operations under this new arrangement were to be shared equally by the parties thereto, but defendant, it was agreed, was not to withdraw his part of such profits until they had reached a definite amount not disclosed by the record. The business was fairly successful.
On or about November 18, 1944, Mr. Harris decided that his company, for different reasons, did not longer care to continue operations under the agreement and informed defendant of his attitude in this respect. The agreement was then terminated by consent. There was at that time merchandise on hand, for which plaintiff had paid, of a value of Seven Thousand ($7,000) Dollars, and there was to defendant's credit, as profits from the business, approximately Three Thousand Two Hundred ($3,200) Dollars. To this juncture in the affairs of the business there is no great difference in the tesimony of the defendant and Mr. Harris.
Mr. Harris is positive that defendant desired to continue in the oil and grease business and in furtherance of this desire agreed to buy, and in fact did buy, the stock then on hand. Defendant denies this and is equally positive that after the termination *Page 339 
of the agreement he acted as liquidator in disposing of said stock. He does not, however, say that the liquidation was discussed or agreed to when the agreement was brought to an end.
The trial judge in written reasons for judgment resolved the issue of fact herein against the defendant.
Immediately after termination of the mentioned relationship between the parties, an inventory of the stock on hand was made, and soon thereafter, at plaintiff's request, defendant began to remove the stock to another warehouse he had leased. Removal was not continuous. In each instance when goods were removed by defendant, a list or invoice thereof was made by plaintiff and signed by defendant to evidence delivery of the goods to him. After all of the goods had been removed defendant found it necessary to again remove them to another warehouse he had leased.
Defendant was charged with the actual cost to plaintiff of the oils and grease. Plaintiff purchased back from defendant some small quantities of the goods for which he was given credit. The profits to the credit of defendant, approximating Three Thousand Two Hundred ($3,200) Dollars, were credited on the price of the goods taken over by him. The balance, Mr. Harris testified, was to have been paid in cash on delivery of the goods but this was not done due to the collapse of defendant's negotiations with a bank for financial assistance.
It is pertinent here to ask, if defendant's contention be true, why was it necessary to remove the oil and grease from plaintiff's warehouse to another one? If he was simply liquidating the business it would have saved considerable money to allow the goods to remain in plaintiff's warehouse until liquidation was completed. It is also of some significance that defendant allowed the profits that had accrued to his account applied on the cost of the oil and grease delivered to him. If he had been liquidating the affairs of the business, as by him contended, he would have been entitled to have this amount paid to him at once or continued to his credit until liquidation was completed. Referring to the accumulated profits, defendant's counsel asked Mr. Harris the following question, to-wit:
"Q. He turned that over to you in satisfaction for taking over the oil, didn't he? It was due you and didn't you receive the entire credit on the books due him in partial settlement?" to which he answered: "A. Sure, his account had a credit on the books. When the oil was charged to Mr. Hill it went on that account and left a balance due. He was supposed to get the cash from the bank and pay us."
Considerable discussion has been given to the character of the relationship that arose between defendant and plaintiff under the discussed agreement. It is argued by defendant that the terms of the agreement superinduced a partnership or joint venture. Our appreciation of the case renders this unimportant. The relative rights and liabilities of the parties must be gauged and determined by events happening after the relation terminated.
The items of expense, etc., listed in the reconventional demand, arose and/or were incurred after termination of the relationship between the parties in November, 1944. No part of same should be charged to plaintiff as it did not expressly nor impliedly agree to be responsible therefor.
It appears reasonably certain from the record that throughout the relationship between defendant and plaintiff, Mr. Harris manifested a friendly disposition toward defendant's ambition to improve his financial condition. In keeping with this spirit, for nearly two years, plaintiff allowed him to conduct the business, out of which this suit arose, virtually in his own way. When Mr. Harris grew tired of the business and the manner of its conduct he put an end to it, and as the business of selling oils and greases appealed to defendant it was but natural, we think, for him to have taken over the stock on hand in the hope of succeeding on his own account. All of the circumstances tend to support plaintiff's contention.
We feel sure the lower court correctly resolved the factual question in the case, and for the reasons herein given, the judgment appealed from is affirmed at defendant's cost. *Page 340